UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT JACKSON and <br> KAREN JACKSON, <br>     PLAINTIFFS, <br> v. <br> SAFEGUARD PROPERTIES, LLC and <br> NATIONSTAR MORTGAGE, LLC and <br> EAGLE SERVICES CORP. <br>     DEFENDANTS. | Case no.: _____ <br><br><br><br> Jury Demanded |

## COMPLAINT

Plaintiffs, Robert Jackson and Karen Jackson, bring this action to secure redress for relief against Defendants Safeguard Properties, LLC, Nationstar Mortgage, LLC, and Eagle Services, Corp. Plaintiffs allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").

## VENUE AND JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337, as Defendants maintain a business office here and do business in this District.

2. Venue in this District is proper because Defendants' attempts to enforce a security interest occurred here, and Defendants reside and transact business in this District.

## PARTIES

3. Plaintiff, Robert Jackson, ("Mr. Jackson") is a natural person and resident of Cook County, Illinois, who is a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

1

4. Plaintiff, Karen Jackson, ("Mrs. Jackson"), is Mr. Jackson's wife and is a natural person and resident of Cook County, Illinois, who is a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

5. Defendant, Safeguard Properties, LLC ("Safeguard") is a corporation that contracts with mortgage lending and servicing institutions to, as its principal purpose, manage and preserve at-risk and foreclose properties. Safeguard maintains a website wherein it states "Safeguard works on behalf of loan servicers and through its national vendor network to keep vacant properties secure, safe and well-maintained inside and out. All work performed follows applicable investor and insurer guidelines. Our contractors evaluate and report potential damages or issues so they can be addressed in a timely and cost-effective manner. Safeguard assists its clients every step of the way, from default through foreclosure and conveyance. Safeguard provides a full spectrum of property preservation services." Safeguard's principal purpose is the enforcement of security interests via the use of instrumentalities of interstate commerce. As Safeguard's principal purpose is to enforce security interests, it is thus considered a debt collector for the purposes of § 1692f(6) of the FDCPA. Safeguard does or transacts business in this District. (Exhibit A, Illinois Secretary of State screen capture).

6. Defendant, Nationstar Mortgage, LLC ("Nationstar"), is a mortgage servicing company headquartered in Coppell, Texas. Nationstar does or transacts business in this District. As Nationstar's principal purpose is to enforce security interests, it is thus considered a debt collector for the purposes of § 1692f(6) of the FDCPA. Nationstar does or transacts business in this District. (Exhibit B, Illinois Secretary of State screen capture).

7. Defendant, Eagle Services Corp. ("Eagle") is a corporation that contracts with mortgage lending and servicing institutions to, as its principal purpose, manage and preserve at-

risk and foreclose properties. Eagle's principal purpose is the enforcement of security interests and is thus considered a debt collector for the purposes of § 1692f(6) of the FDCPA. Eagle does or transacts business in this District.

## NATURE OF THE CASE

8. Safeguard and Eagle contract with mortgage lending and servicing institutions, such as Nationstar, to manage and preserve at-risk and foreclosed properties. Specifically, Safeguard and Eagle determine the occupancy status of properties and secure vacant properties for lending and servicing institutions.

9. Under Illinois law, homeowners in default on their mortgage payments have the right to remain in their home until the foreclosure process has been completed and an order of possession has been entered against the homeowner.

10. Despite these protections, Safeguard and Eagle, at the direction of Nationstar, unlawfully dispossessed Plaintiffs from their home by breaking into Plaintiffs' home, destroying portions of Plaintiff's home and property, changed the locks on, and removed Plaintiffs' personal property, all in the face of clear evidence that Plaintiffs resided at, and intended to remain in their home, in violation of the FDCPA.

## FACTS

11. Mr. Jackson is the owner of a parcel of property commonly known as 9130 South Mozart Avenue, Evergreen Park, Illinois 60805 ("Property").

12. Mr. Jackson has been the owner of the Property in question at all times relevant to the allegations in this Complaint.

13. In June, 2008, Mr. Jackson entered into a mortgage agreement with Taylor, Bean & Whitaker Mortgage Corp. in connection with his purchase of the Property, thereby creating a security interest.

14. Mr. Jackson purchased the Property for use as his personal residence, and at all times used it for this purpose.

15. Mr. Jackson made mortgage payments thereafter, pursuant to the agreement.

16. Sometime thereafter, Mr. Jackson's mortgage was assigned or otherwise transferred to Ocwen Loan Servicing, LLC.

17. In or around early 2010, Mr. Jackson defaulted on his mortgage due to financial hardship.

18. On July 20, 2010, Ocwen Loan Servicing, LLC filed a complaint in The Circuit Court of the First Municipal District in Cook County, Illinois, seeking to foreclose the mortgage. Said complaint was titled *Ocwen Loan Servicing, LLC vs. Robert Jackson et al.*, Case # 2010 CH 31109 ("foreclosure action"), and said complaint sought both a deficiency judgment and possession of the Property.

19. At the time of the filing of this Complaint the foreclosure action is ongoing.

20. Sometime after the filing of the foreclosure action, Mr. Jackson's mortgage was assigned or otherwise transferred to Defendant Nationstar.

21. At all times relevant hereto, Defendants did not have permission to enter the Property for any reason whatsoever.

22. Neither Plaintiff had given any Defendant permission to enter the Property.

23. As of March 12, 2015, Plaintiffs had numerous items of personal property located on and within the Property; three vehicles parked on the property, furniture and personal property in the house, and maintained utilities, including electricity and water, to the Property.

24. On March 12, 2015, the Mr. and Mrs. Jackson were both out of town for work.

25. At the time Plaintiffs left the Property, it was secured and locked, having been locked by Plaintiffs, and their security system was turned on.

26. Ms. Jennifer Ramirez ("Ms. Ramirez"), a neighbor who lives next door to the Jacksons, witnessed events that occurred on March 12, 2015, and April 1, 2015, and has provided sworn testimony in the form of an affidavit. (Exhibit C, Affidavit).

27. On March 12, 2015, Ms. Ramirez observed three agents or employees of Safeguard arrive at Plaintiff's property in a minivan and inspect the property from the outside.

28. Ms. Ramirez approached the individuals and asked what they were doing. (Exhibit C, Affidavit ¶2).

29. The individuals stated that they were from Safeguard and that the bank was taking the house over due to foreclosure. (Exhibit C, Affidavit ¶2).

30. One of the individuals showed Ms. Ramirez papers to demonstrate they were conducting business for Safeguard, and stated that they were there to change the locks and take pictures of the property, both inside and outside. (Exhibit C, Affidavit ¶2).

31. Safeguard's agents or employees began taking pictures of the outside of the property. (Exhibit C, Affidavit ¶2).

32. Ms. Ramirez notified Safeguard's agents or employees that the house may have an alarm system and that the police may come. (Exhibit C, Affidavit ¶2).

5

33. Safeguard's agents or employees entered the house and smashed the ADT alarm box.

34. Soon thereafter, two Evergreen Park Police cars arrived. (Exhibit C, Affidavit ¶2).

35. The police officers spoke to one or more of Safeguard's agents or employees and then left.

36. Safeguard's agents or employees remained at the house, took pictures, and later backed up a minivan to the side door and loaded personal property belonging to the Mr. and Mrs. Jackson into the van.

37. The police officers filed a report. (Exhibit D, Police Report).

38. The "Notes" section of the report identifies "Safe guard Properties, Property Preservation Services…" and states, *inter alia*, "… sent workers to change locks, etc." and "… on scene to do work." (Exhibit D, Police Report).

39. On April 1, 2015, Ms. Ramirez witnessed two men drive up to the Jackson's Property. (Exhibit C, Affidavit ¶3).

40. Ms. Ramirez called out to the men and one of the men approached Ms. Ramirez. (Exhibit C, Affidavit ¶3).

41. The man identified himself as Darrell Norman ("Mr. Norman") and said he was from Safeguard and Eagle Services. (Exhibit C, Affidavit ¶3).

42. Upon information and belief, Mr. Norman's accomplice was an agent or employee of either Eagle or Safeguard.

43. Mr. Norman stated that he had also been at the Property the day before, March 31, 2015. (Exhibit C, Affidavit ¶3).

6

44. Mr. Norman displayed an "identification badge" to Ms. Ramirez, and provided her with his name, a telephone number (773) 905-8701, and the name of his company, Eagle Services.

45. Mr. Norman stated that "… the bank took over the house and he was now in charge of making sure the property was kept up and maintained." (Exhibit C, Affidavit ¶3).

46. Ms. Ramirez asked if she could gather personal items contained in the house for the Jacksons. (Exhibit C, Affidavit ¶3).

47. Mr. Norman said that she could do so the next time that he was at the Property but that there was not much left. (Exhibit C, Affidavit ¶3).

48. Mr. Norman stated that the police had probably removed most of the Jackson's personal items. (Exhibit C, Affidavit ¶3).

49. Mr. Norman and his accomplice then entered the Property and loaded more of the Jackson's personal property into the car. (Affidavit ¶3).

50. On April 5, 2015, Ms. Jackson returned home to find a lockbox on the side door of the Jackson's home.

51. Ms. Jackson was able to gain access to the Property.

52. Ms. Jackson called ADT, the security company, who called the police.

53. The police accompanied Ms. Jackson into the home to make sure no one was in the home.

54. The police told Ms. Jackson that because the house was in foreclosure the bank or mortgage company probably hired someone to put the lock box on the door.

55. Ms. Jackson was confused, shocked, embarrassed, humiliated, and frightened.

56. Plaintiffs did not have any intention to allow anyone access to the Property during the period of time from March 12, 2015 to April 5, 2015.

57. Ms. Jackson called her sister and nephew to help her pack the Jackson's remaining personal property, moved the personal property into a storage locker and lived with her sister for a week until her husband was able to return home.

58. Ms. Jackson feared for her safety and that the agents or employees from Safeguard and/or Eagle would return.

59. In addition to fearing for her safety, Ms. Jackson relied on the representations made by Safeguard's and Eagle's agents or employees to Plaintiff's, through the police and her neighbor Ms. Ramirez, that Nationstar had a legal right to the property when it did not.

60. Upon inspection of the house, Ms. Jackson discovered, among other things, that:

   a. The alarm system had been destroyed;

   b. The lock on the Property's gate had been broken;

   c. The door locks had been broken off and replaced with new locks;

   d. The toilets and sinks had stickers on them stating that they were winterized, the stickers were dated 3/12/2015;

   e. One of Mrs. Jackson's Tupperware bowls had been filled with human feces and placed in her suitcase.

61. Safeguard admitted that a work order was received by Mr. Jackson's mortgage servicer.

62. Safeguard and Eagle acted at the direction and authorization of Nationstar.

63. Safeguard hired Eagle as a subcontractor to do onsite work at the Property.

64. Any activity or work performed on the Property by Eagle was as an agent or representative of Safeguard, which is in turn an agent or representative of Nationstar.

65. Agents and/or employees of Eagle and Safeguard were in the Property, without permission, during the period of time from March 12, 2015, to April 5, 2015, and possibly earlier.

66. The principal purpose of Safeguard and Eagle's business is the enforcement of security interests, and each uses instrumentalities of interstate commerce, including the mails, in furtherance of its business.

67. In accessing the Property and removing Plaintiffs' possessions from the same, Defendants Safeguard and Eagle each took non-judicial action to effect dispossession and disablement of Plaintiffs' property.

68. None of the Defendants had a present right to possession of the Property and personal property of Plaintiffs, at the time that they caused dispossession and disablement of the same.

69. The Property was claimed as collateral by Nationstar through an enforceable security interest, namely a mortgage, at the time Defendants caused dispossession and disablement of the Property and the personal property located therein.

70. The Property and Plaintiffs' personal property located therein, that was taken by Defendants, was exempt by law from dispossession and disablement, as no order had been entered allowing Defendants to access the Property, or remove Plaintiffs' personal property from the same, on or around March 12, 2015 through April 5, 2015, or any other date.

71. Illinois law did not allow for Defendants to access the Property, or remove Plaintiffs' personal property from the same, on or around March 12, 2015, March 31, 2015, April

1, 2015, or any other date, when Defendants accessed the Property, and removed Plaintiffs' personal property located therein.

72. Under Illinois law, homeowners in default on their mortgage payments have the right to remain in their home until the foreclosure process has been completed and an order of possession has been entered against the homeowner.

73. Despite these protections, Defendants Eagle and Safeguard, at Nationstar's direction and authorization, unlawfully disposed legal occupants of their homes by breaking into occupied houses, changing the locks, removing the Plaintiffs' personal property, in the face of clear evidence that the property remains legally occupied.

74. The Illinois Attorney General filed a complaint against Safeguard and its subcontractors for the same actions complained of herein, by Plaintiffs. (Exhibit E, Complaint in the case of *The People of the State of Illinois vs. Safeguard Properties, LLC*, case # 2013 CH 20715).

75. On or around June 3, 2015, Safeguard entered into a consent decree with the Illinois Attorney General.

76. Plaintiffs suffered, *inter alia*, financial loss, emotional distress, fear for personal safety, panic, shock, anxiety, nausea, worry, confusion, depression, embarrassment, nervousness, fear, sleeplessness, loss of appetite, feelings of helplessness and hopelessness, as a result of the actions of Defendants.

77. Plaintiffs thereafter were forced to hire and pay an attorney to review and advise on their legal options as to the dispossession and disablement of Mr. Jackson's Property, and Plaintiffs' personal property.

78. Upon information and belief, Nationstar approved, ratified, and/or directed Safeguard's and Eagle's actions toward Plaintiffs.

79. Nationstar is liable for the acts and omissions of Safeguard and Eagle, committed in connection with efforts to collect the alleged debt from Mr. Jackson. (See *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3rd Cir. 2000)).

80. Defendants' collection communications and activities are to be interpreted under the "unsophisticated consumer" standard. See *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

81. As a direct and proximate cause of Defendants' actions, Plaintiffs suffered financial damages and actual damages including emotional distress.

## COUNT I-FAIR DEBT COLLECTION PRACTICES ACT—SAFEGUARD, NATIONSTAR AND EAGLE

82. Plaintiffs repeat, reallege, and incorporate by reference the foregoing Paragraphs as though fully stated herein.

15 U.S.C § 1692(f) states, in relevant part, as follows:

**§ 1692f. Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

\*\*\*

**(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—**

**(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;**

\*\*\*

**(C) the property is exempt by law from such dispossession or disablement.**

83. In accessing the Property and removing Plaintiffs' possessions from the same, Defendants Safeguard, Nationstar, and Eagle each took non-judicial action to effect dispossession and disablement of property.

84. The Property was claimed as collateral by Nationstar through an enforceable security interest, namely a mortgage, at the time Defendants caused dispossession and disablement of the Property and the personal property located therein.

85. The Property and Plaintiffs' personal property located therein, that was taken by Defendants, was exempt by law from dispossession and disablement, as no order had been entered allowing Defendants to access the Property, or remove Plaintiffs' personal property from the same, on or around March 12, 2015, March 31, 2015, April 1, 2015, or any other date.

86. Illinois law did not allow Defendants to access the Property, or remove Plaintiffs' personal property from the same, on or around March 12, 2015, April 1, 2015, or any other date, when Defendants accessed the Property, and removed Plaintiffs' personal property located therein.

87. None of the Defendants had a present right to possession of the Property and personal property of Plaintiffs, at the time that they caused dispossession and disablement of the same.

88. Defendants therefore violated 15 U.S.C. § 1692f(6)(C) of the FDCA when they took nonjudicial action to dispossess Plaintiffs of the Property when there was no present right to possession of the property claimed as collateral through an enforceable security interest.

89. Defendants' attempt to dispossess and disable Plaintiffs of their personal property, and dispossess Plaintiffs from the Property, was of a non-judicial nature because such action was expressly prohibited by Illinois law at the time of said dispossession and disablement.

90. Therefore, Defendants violated 15 U.S.C. § 1692f(6)(C) of the FDCA when they took nonjudicial action to dispossession or disablement Plaintiffs' property when the property was exempt by law from such dispossession or disablement.

91. As a result of Defendants' violations of the FDCPA, Plaintiffs are entitled to an award of actual damages, statutory damages, costs and reasonable attorney fees.

## REQUEST FOR RELIEF-FDCPA

WHEREFORE, Plaintiffs request that judgment be entered in their favor against the Defendants, for the following:

a. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2) from each Defendant, for each Plaintiff;

b. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

c. Costs and reasonable attorney fees pursuant to 15 U.S.C. 1692k(a)(3); and

d. Such other or further relief as the Court deems proper.

## **JURY DEMAND**

Plaintiffs demand trial by jury.

**The Law Office of Robert W. Harrer, P.C.**  By: s/ Robert W. Harrer
111 W. Washington St., Suite 1360           Robert W. Harrer
Chicago, Illinois 60602
Tel. 312-600-8466
Fax 312-610-5646
rob.harrer@harrerlaw.com

**The Law Office of M. Kris Kasalo, Ltd.**
20 North Clark Street, Suite 3100
Chicago, Illinois 60602
tele 312.726.6160
fax 312.698.5054
mario.kasalo@kasalolaw.com

### NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: s/ Robert W. Harrer
     Robert W. Harrer

### DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendants are aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By: s/ Robert W. Harrer
     Robert W. Harrer